Filed 10/25/23  P. v. Gordon CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097507 |
| Plaintiff and Respondent, | (Super. Ct. No. CR69564) |
| v. | |
| PATRICK BRUCE GORDON, | |
| Defendant and Appellant. | |

In 1985, a jury convicted defendant Patrick Bruce Gordon of murder, robbery, and conspiracy to commit murder and robbery.  The jury also found the special circumstance true that the murder was committed during the commission of a robbery.  The trial court denied defendant's petition for resentencing pursuant to Penal Code[1] section 1172.6 at the prima facie stage.[2]  Defendant appeals, arguing the trial court erred in denying his

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  There were no substantive changes to the statute.  Defendant filed this petition under former section 1170.95, but we will cite to the current section 1172.6.

1

petition because he made a prima facie showing that he was entitled to relief and the jury's true finding on the special circumstance does not render him ineligible for relief as a matter of law. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The following background is taken from our Supreme Court's opinion in defendant's direct appeal, *People v. Gordon* (1990) 50 Cal.3d 1223 (*Gordon*).

"Together with his brothers, Bernard Patrick Gordon (hereafter Bernard) and Michael Eugene Caputo (hereafter Michael), defendant . . . was charged with conspiracy (Pen. Code, § 182) to commit murder (*id.*, § 187) and robbery (*id.*, § 211); the murder of William Camp Wiley; and the robbery of the same individual. As to the murder charge, a felony-murder-robbery special circumstance (*id.*, § 190.2, subd. (a)(17)(i)) was alleged against all three men. As to both the murder and robbery charges, personal use of a firearm (*id.*, § 12022.5) was alleged against Bernard and Michael. All three men pleaded not guilty and denied the allegations. Defendant was tried separately. A jury found him guilty as charged and determined the special circumstance allegation was true. It subsequently fixed the penalty at death. The court entered judgment accordingly." (*Gordon, supra*, 50 Cal.3d at p. 1233.)

"At the guilt phase the prosecution's theory was that defendant was responsible with his brothers for the crimes charged — specifically, he was liable for the robbery and murder by aiding and abetting them as their getaway driver, or at least by conspiring with them to commit the offenses." (*Gordon, supra*, 50 Cal.3d at p. 1233.)

"[A]bout 13 months before the commission of the crimes for which defendant was standing trial . . . Mark Allen Freed, a courier for an armored-car service, was robbed and murdered in the sales area of a K mart store in Riverside after he picked up the business's receipts for deposit to its bank account." (*Gordon, supra*, 50 Cal.3d at p. 1234.) In a shootout during that robbery, the two robbers shot the courier, shot each other, and the courier shot at least one of the robbers, but the courier died from his wounds. (*Ibid.*)

2

"Evidence connected defendant and his brothers to this Riverside K mart incident."
(*Ibid.*)

"On December 18, 1983, William Camp Wiley, [another] courier for an armored-car service, was robbed and murdered in the sales area of a K mart store in Stockton after he picked up the business's receipts for deposit to its bank account. Wiley was carrying the receipts and was armed with a .38-caliber revolver. He was accosted [in the store] by two men with handguns and without masks. Soon shots rang out. . . . Wiley was shot three times in the chest and once in the abdomen, and died as a result of his wounds. The perpetrators fled through a fire exit at the rear of the store, taking with them Wiley's gun as well as the business's receipts." (*Gordon, supra*, 50 Cal.3d at p. 1235.) Evidence found at or near their homes connected defendant and his brothers to the murders and robberies at the Stockton and Riverside K marts. (*Id*. at pp. 1235-1236.) "Further, while they were in custody after their arrest, defendant and Bernard passed coded notes which were intercepted, and partially decoded, by the jailers" that further incriminated them. (*Id*. at p. 1236.)

"Finally, at trial Bernard and Michael were named as the shooters at the Stockton K mart by several witnesses . . . ." (*Gordon, supra*, 50 Cal.3d at p. 1236.) One witness saw defendant sitting in the driver's seat of a station wagon with two other men near the store. (*Ibid.*) "One witness testified she had seen Bernard and possibly defendant acting suspiciously in the store during the week preceding the incident, the former twice and the latter once." (*Ibid*.)

"The theory of the defense was that defendant was not involved at all in the charged crimes committed at the Stockton K mart or in the uncharged offenses relating to the Riverside K mart — or that at most he may have been an accessory to the former." (*Gordon, supra*, 50 Cal.3d at p. 1236.)

A "jailhouse informer named Billy Ray Colbert . . . testified that he had been in custody with defendant . . . : defendant, he said, admitted involvement in both the

charged crimes committed at the Stockton K mart and the uncharged offenses relating to the Riverside K mart. The prosecution also introduced evidence showing that shortly after the Stockton crimes, defendant and his wife engaged in several large cash transactions — even though defendant was evidently unemployed and his wife was definitely so." (*Gordon, supra*, 50 Cal.3d at p. 1237.)

The defense proffered its own jailhouse informant, who testified Colbert had admitted that defendant never made any admissions in his presence. (*Gordon, supra*, 50 Cal.3d at p. 1237.)

Included in its instructions to the jury,[3] the trial court instructed the jury on aiding and abetting, first degree premeditated murder, felony murder, and the natural and probable consequences doctrine.

"The persons concerned in the commission of a crime who are regarded by law as principals in the crime thus committed and equally guilty thereof include the following: [¶] Those who directly and actively commit the act constituting the crime, or those who aid and abet the commission of the crime. [¶] One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly and intentionally aided or encouraged. [¶] A person aids and abets the commission of a crime when he: [¶] 1: With knowledge of the unlawful purpose of the perpetrator; and [¶] 2: With the intent or purpose of committing, encouraging, or facilitating the commission of the offense by act or advice aids, promotes, encourages or instigates the commission of the crime."

---

[3] Defendant filed a motion asking this court to incorporate one volume of the reporter's transcript, pages 8787 to 8977, and one volume of the clerk's transcript, pages 730 to 933, from the appellate record from his original appeal to the Supreme Court into the record in this appeal. We granted the request for judicial notice of these documents. On our own motion, we now augment the record to include them in this record. (Cal. Rules of court, rule 8.155.)

On the crime of murder, the trial court instructed:

"The crime of murder is the unlawful killing of a human being with malice aforethought, or the unlawful killing of a human being which occurs during the commission of a felony inherently dangerous to human life. [¶] In order to prove the commission of the crime of murder in this case each of the following elements must be proved: [¶] That a human being was killed; [¶] That the killing was unlawful; [¶] And that the killing was done with malice aforethought; [¶] Or occurred during the commission of a felony inherently dangerous to human life. [¶] Robbery is a felony inherently dangerous to human life. [¶] Malice may be either expressed or implied. [¶] Malice is expressed when there is manifested an intention unlawfully to kill a human being. [¶] Malice is implied when the killing results from an intentional act involving a high degree of probability that it will result in death, which act is done for a base antisocial purpose and with a wanton disregard for human life; [¶] Or when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life."

The trial court went on to instruct the jury:

"If a human being is killed by anyone of several people jointly engaged at the time of such killing and in the perpetration of the crime of robbery, and if the killing is done in furtherance of a common design and agreement to commit such crime, or is an ordinary and probable result of the pursuit of that design and agreement, all such persons so jointly engaged are guilty of murder of the first degree, whether the killing is intentional, unintentional or accidental. [¶] If a human being is killed by anyone of several persons engaged in the perpetration of the crime of robbery all persons who either directly and actively commit the act constituting such crime or who with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging or facilitating the commission of the offense, aid, promote, encourage or

5

instigate by act or advice its commission are guilty of murder of the first degree, whether the killing is intentional, unintentional or accidental."

The trial court also instructed the jury on the special circumstance:

"If you find the defendant in this case guilty of murder in the first degree you must then determine if the murder was committed under the following special circumstance. [¶] That the murder of William Camp Wiley was committed while defendant was engaged in or aided and abetted the commission of a robbery. [¶] A special circumstance must be proved beyond a reasonable doubt and to a moral certainty. [¶] If you have a reasonable doubt as to whether the special circumstance is true, it is your duty to find that it is not true. [¶] If defendant . . . was an aider and abettor but not the actual killer, it must be proved beyond a reasonable doubt that he intended to aid in the killing of a human being before you are permitted to find the alleged special circumstance of that first degree murder to be true as to the defendant . . . . [¶] In order to find the special circumstance charged in this case to be true or untrue you must agree unanimously. [¶] You will include in your verdict, on a form that will be supplied, your finding as to whether the special circumstance is or is not true. [¶] And to find that the special circumstance referred to in these instructions as murder in the commission of a robbery is true, it must be proved one, that the murder was committed while defendant was engaged in or aided and abetted the commission of a robbery. [¶] Two, that the defendant intended to aid another in the killing human being. [¶] Three, that the murder was committed in order to carry out or advance the commission of the crime of robbery, or to facilitate the escape therefrom or to avoid detection. [¶] In other words, the special circumstance referred to in these instructions is not established if the robbery was merely incidental to the commission of the murder."

During the surrebuttal portion of his final closing argument, the prosecutor highlighted the special circumstance jury verdict form. The prosecutor told the jury it was necessary for them to find either "the defendant personally intended that the co-

6

defendants kill the victim or knew that the co-defendants intended to kill the victim and intentionally aided, abetted, counseled, commanded, induced, solicited, requested, encouraged or assisted in the --." The record does not demonstrate the prosecutor finished this sentence. Following that statement, the prosecutor refocused his arguments on the evidence that demonstrated defendant assisted his codefendants prior to the crime. The prosecutor also discussed the evidence that tied defendant to the crimes. The prosecutor did not argue to the jury that it could find the special circumstance true without finding he had the intent to kill. Rather, the prosecutor argued defendant's intent to kill could be inferred from his knowledge and participation in the prior Riverside robbery and murder and that he knew his codefendants were going to kill the armored car driver during the robbery at the Stockton K mart.

The jury found defendant guilty of conspiracy to commit murder and robbery and found the special circumstance true (§§ 182, 187, 211). (*Gordon, supra*, 50 Cal.3d at p. 1233.)

As to the special circumstance, the jury returned this finding: "We, the jury in the above entitled cause having found the defendant guilty of MURDER IN THE FIRST DEGREE, find to be true the Special Circumstance that the murder was committed while the defendant was engaged in or aided and abetted the commission of a robbery, and that defendant personally intended that the co-defendants kill the victim or knew that the co-defendants intended to kill the victim and intentionally aided and abetted, counselled, commanded, induced, solicited, requested, encouraged or assisted in the killing."

Our Supreme Court affirmed defendant's conviction on his automatic appeal. (*Gordon, supra*, 50 Cal.3d at p. 1233.)

In December 2021, defendant filed a petition for relief from his murder conviction under section 1172.6. The trial court appointed counsel for defendant. The prosecution filed an informal response arguing defendant was ineligible for relief because he was convicted of conspiracy to commit murder and the jury found the alleged special

7

circumstance true. Under either theory, the prosecution contended defendant had an intent to kill which rendered him ineligible for relief.

After receiving briefing, the trial court issued a written decision denying the petition. Relying on the jury instructions given and the jury verdicts and findings contained in the record of conviction, the court found defendant's conviction for conspiracy to commit murder and the jury's special circumstances finding demonstrated defendant had the intent to kill when he aided and abetted this murder and was therefore ineligible for relief as a matter of law.

Defendant filed a timely notice of appeal.

DISCUSSION

Defendant argues the trial court erred in determining that the jury's true finding on the special circumstance allegation negated the prima facie case he established in his petition. He also argues erroneous jury instructions and improper argument by the prosecution allowed the jury to conflate the guilt phase aider and abettor liability standard with the felony-murder special-circumstance standard. The People counter that the jury's true finding on the robbery-murder special-circumstance allegation establishes defendant was a direct aider and abettor of the crime of murder with an intent to kill and is therefore ineligible for relief under section 1172.6. We agree with the People.

We begin with Senate Bill No. 1437's (2017-2018 Reg. Sess.) (Senate Bill No. 1437) amendments of sections 188 and 189, the enactment of section 1172.6, and subsequent statutory amendments.

Senate Bill No. 1437 was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

8

As relevant here, Senate Bill No. 1437 amended the felony-murder rule by adding section 189, subdivision (e). (*People v. Harden* (2022) 81 Cal.App.5th 45, 50-51; see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." (Stats. 2018, ch. 1015, § 3.)

Senate Bill No. 1437 also "amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3), added by Stats. 2018, ch. 1015, § 2.)" (*People v. Harden, supra*, 81 Cal.App.5th at p. 51; see *Strong, supra*, 13 Cal.5th at pp. 707-708.) This language eliminated the use of the natural and probable consequences doctrine in murder prosecutions but left intact implied malice murder for direct aiders and abettors. (*People v. Gentile* (2020) 10 Cal.5th 830, 846 (*Gentile*).)

The amendments to sections 188 and 189 "did not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*Gentile, supra*, 10 Cal.5th at p. 848.) Put another way, "section 189, as amended, now limits liability under a felony-murder theory principally to 'actual killer[s]' (Pen. Code, § 189, subd. (e)(1)) and those who, 'with the intent to kill,' aid or abet 'the actual killer in the commission of murder in the first degree' (*id.*, subd. (e)(2))." (*Strong, supra*, 13 Cal.5th at p. 708.) For a direct aider and abettor, this requisite intent

9

to kill is established if the "accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' " (*Gentile, supra*, 10 Cal.5th at p. 843.) Thus, a defendant who aided and abetted the murder with the intent to kill is ineligible for resentencing under section 1172.6 as a matter of law. (See also *People v. Estrada* (2022) 77 Cal.App.5th 941, 945 [murder conviction based on direct aiding and abetting with intent to kill is ineligible for § 1172.6 resentencing].)

"Senate Bill No. 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," codified in section 1172.6. (*Strong, supra*, 13 Cal.5th at p. 708.) It permits "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill No. 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.) Section 1172.6, subdivisions (b) and (c) create a two-step process for evaluating a petitioner's eligibility for relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 960 (*Lewis*).) In the first step, the trial court determines whether the petition is facially sufficient under section 1172.6, subdivision (b). (*Lewis*, at p. 960.)

As relevant here, to make a prima facie case for eligibility under section 1172.6, defendant had to show that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of murder or attempted murder under felony murder and/or the natural and probable consequences doctrine. He must also show he was convicted of murder or attempted murder and that he could not presently be convicted of such because of changes to section 188 or 189. (§ 1172.6, subd. (a).) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether

10

the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.]" (*Strong, supra*, 13 Cal.5th at p. 708, citing *Lewis, supra*, 11 Cal.5th at pp. 970-972; § 1172.6, subd. (c).)

"[T]he 'prima facie bar was intentionally and correctly set very low.' " (*Lewis, supra*, 11 Cal.5th at p. 972.) The trial court must accept the defendant's allegations as true and "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Ibid*.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Id*. at p. 971.)

Here, the trial court denied defendant's petition at the prima facie stage. A denial at this stage is appropriate only if the record of conviction demonstrates that defendant is ineligible for relief as a matter of law, that is, that the record of conviction shows that he was not convicted under a theory of liability affected by Senate Bill No. 1437's amendments. (See *People v. Mancilla* (2021) 67 Cal.App.5th 854, 862.) Thus, the relevant question before us is whether, without weighing conflicting evidence or making credibility determinations, the record of conviction irrefutably establishes defendant is guilty of murder under a currently valid theory of murder. (See *People v. Harden, supra*, 81 Cal.App.5th at p. 56; *People v. Lopez* (2023) 88 Cal.App.5th 566, 576.) This is a purely legal conclusion, which we review de novo. (See *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

We conclude the record of conviction establishes defendant is a direct aider and abettor of murder who acted with an intent to kill. Prior to the special circumstance instruction, the trial court instructed the jury on the general principles of aiding and

11

abetting.  As to the special circumstance allegation, the trial court instructed the jury that "[i]f defendant . . . was an aider and abettor but not the actual killer, it must be proved beyond a reasonable doubt that he intended to aid in the killing of a human being before you are permitted to find the alleged special circumstance of that first degree murder to be true as to . . . defendant."  In the next instruction, the trial court repeated the jury had to find "defendant intended to aid another in the killing of a human being."

After deliberations, the jury returned its verdict explicitly finding, "the murder was committed while the defendant was engaged in or aided and abetted the commission of a robbery, and that defendant personally intended that the co-defendants kill the victim or knew that the co-defendants intended to kill the victim and intentionally aided and abetted, counselled, commanded, induced, solicited, requested, encouraged or assisted in the killing."

This true finding established that defendant, in aiding and abetting the robbery and murder, either (a) personally intended to kill the victim, or (b) knew his codefendants intended to kill the victim and aided and abetted that killing.  Under either theory, the jury necessarily and conclusively determined defendant acted with the intent to kill when he aided and abetted the murder of the Stockton K mart courier during this robbery. (*Gentile, supra*, 10 Cal.5th at p. 843.)  These jury findings refute the allegations in the petition for resentencing and demonstrate defendant was not eligible for relief as a matter of law.  (*Strong, supra*, 13 Cal.5th at p. 708.)

Defendant levels several attacks on the jury's special circumstance finding in an effort to defuse its preclusive effect here.  First, he argues the trial court failed to instruct the jury that defendant had to have the intent to kill for this finding to be found true.  This is not so.  The trial court specifically instructed the jury, "If defendant . . . was an aider and abettor but not the actual killer, it must be proved beyond a reasonable doubt that he intended to aid in the killing of a human being before you are permitted to find the alleged special circumstance of that first degree murder to be true as to the

defendant . . . ." The jury's subsequent specific finding on this point reinforced that it understood this requirement and determined defendant did have the intent to kill.

Second, defendant suggests the changes to the law announced by *People v. Banks* (2015) 61 Cal.4th 788, and *People v. Clark* (2016) 63 Cal.4th 522, are relevant to the question we decide here. (See *Strong, supra*, 13 Cal.5th at p. 703.) Those cases, however, addressed the issues of what it means to be a " 'major participant' " in a crime who acts with " 'reckless indifference' " to human life as those terms have evolved and been given judicial gloss by our Supreme Court over time. (*Ibid*.) Defendant's liability for murder here was not based on whether he was a major participant in this crime who acted with reckless disregard for human life, but solely on his own intent to kill as an aider and abettor.

Third, defendant further argues the prosecutor's arguments undercut the jury's findings because the prosecutor focused on defendant's actions related to the robbery and the prosecutor did not tell the jury they were required to make a finding he intended to kill. We disagree.

The prosecutor did not argue that the jury could find the special circumstance true without finding defendant had an intent to kill. Moreover, the prosecutor's closing argument does not set forth a specific factual basis for a jury's verdict because a prosecutor's argument is "not binding on the jury or the court." (*People v. Leonard* (2014) 228 Cal.App.4th 465, 500.) Our Supreme Court has explained, "It is elementary . . . that the prosecutor's argument is not evidence and the theories suggested are not the exclusive theories that may be considered by the jury." (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.) As we have already concluded, the jury was properly instructed defendant must have had the intent to kill under the aider and abettor theory to find the special circumstance allegation true. "Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

13

Defendant's fourth attack on the jury's true finding of the special circumstance centers on *People v. Ervin* (2021) 72 Cal.App.5th 90, 104. There, the Court of Appeal reversed the trial court's finding the defendant failed to establish a prima facie case under section 1172.6. (*Ervin*, at p. 95.) The appellate court concluded that jury's special circumstance finding did not categorically bar the defendant from making a prima facie showing in large part because the jury instructions on the special circumstance allowed the jury to render a true finding if they concluded the defendant intended to kill *or* to aid another in the killing of a human being. (*Id*. at p. 107.) The second basis for the finding did not require the jury to find the defendant intended to kill to find the special circumstance true. (*Ibid.*) We do not find *Ervin* instructive here. The jury was properly instructed on the intent to kill and made that finding.[4]

Defendant's final attack challenges his underlying murder conviction, arguing he could not now be convicted of murder under the theories advanced at trial, and thus, the jury's finding on the special circumstance allegation is immaterial. Defendant's argument fails because the underlying aim of the Legislature "in amending the felony-murder rule was 'to ensure that murder liability is not imposed on a person who is not the actual killer, *did not act with the intent to kill*, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f), italics added.)" (*People v. Lopez, supra*, 88 Cal.App.5th at p. 579.) The relevant question is whether defendant's conviction stands under a now-valid theory. (*Id.* at p. 576.) Defendant is just such a person. A direct aider and abettor who acted with the intent to kill remains guilty of murder under a now-valid theory and is ineligible for relief under section 1172.6. (*Gentile, supra*, 10 Cal.5th at p. 843.)

---

**4**      Because this finding demonstrates defendant had the requisite intent to kill rendering him ineligible for relief under section 1172.6, we decline to examine the People's argument that defendant's conviction for conspiracy independently establishes that intent to kill. (See *People v. Medrano* (2021) 68 Cal.App.5th 177, 182-183.)

DISPOSITION

The judgment is affirmed.


                                             /s/
                                        EARL, P. J.


We concur:


    /s/
MESIWALA, J.


    /s/
KEITHLEY, J.*

---

   *      Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.